COMMONWEALTH of Pennsylvania,
Appellant

v.

Gary R. HUGGINS, Appellee.

Superior Court of Pennsylvania.

Argued May 3, 2001.

Filed Jan. 10, 2002.

Elmer D. Christine, Asst. Dist. Atty., Stroudsburg, for Com., appellant.

Lawrence A.J. Spegar, Mount Pocono, for appellee.

Before: DEL SOLE, President Judge, CAVANAUGH, J., McEWEN, President Judge Emeritus, JOHNSON, JOYCE, STEVENS, MUSMANNO, LALLY-GREEN, and TODD, JJ.

MUSMANNO, J.:

¶ 1 The Commonwealth appeals from the Order entered on March 31, 2000, which granted Appellee Gary Huggins's ("Huggins") Motion to dismiss certain charges filed against him and to suppress evidence. We affirm in part and reverse in part.

¶ 2 On July 10, 1998, at about 5:15 p.m., Huggins fell asleep while driving a passenger van on Interstate 80. After Huggins's van struck another vehicle, it drove up an embankment, flipped, and came to rest on its passenger side. At the time of the accident, Huggins's van held 24 occupants, 20 of whom were under the age of 12 years old. Two of the occupants died as a result of the accident, and 16 occupants sustained injuries.

¶ 3 On August 16, 1999, police charged Huggins with 23 counts of aggravated assault, two counts of involuntary manslaughter, two counts of homicide by vehicle, 23 counts of recklessly endangering another person (REAP),[1] and various summary offenses.[2] On December 29, 1999, Huggins filed an omnibus pretrial Motion to dismiss the charges of aggravated assault, involuntary manslaughter, homicide by vehicle, and REAP. Huggins also sought to suppress any evidence relating to the use or non-use of seat belts in the van.

¶ 4 On February 16, 2000, the trial court conducted a hearing on Huggins's Motion. At that time, the parties agreed that the evidentiary record would be comprised of the testimony from an earlier preliminary hearing. N.T., 2/16/00, at 3–4. The trial court summarized the evidence from this hearing as follows:

On July 10, 1998 at approximately 5:15 p.m., [Huggins] was driving a Ford passenger van eastbound on Interstate 80, when at mile marker 298.8 he allegedly fell asleep while still operating the vehicle. [Huggins] allegedly woke up just in time to see that he was going to impact with the rear end of a Saturn sedan driven by Charles P. Bayly. The front left section of [Huggins's] van struck the right rear portion of Mr. Bayly's Saturn, [Huggins's] van veered sharply to the right, crossed the right travel lane, and went onto the right shoulder where it impacted with the embankment. The van rode up the embankment, then flipped in the air and came to rest on the passenger side; half in the right shoulder of the highway, and half in the right lane of travel. Mr. Bayly pulled his vehicle over to the side of the road and went to render assistance to the people in [Huggins's] van. Mr. Bayly testified that he was driving in the left lane at approximately 60 to 65 miles per hour when the accident occurred, and that he did not see [Huggins's] van until after the vehicles collided. Mr. Bayly also testified that it was a clear and sunny afternoon on the date of the incident.

---

1. *See* 18 Pa.C.S.A. §§ 2702(a)(1), 2504(a), 3732, and 2705, respectively.

2. Huggins was charged with reckless driving, careless driving, driving at an unsafe speed, following too closely, and disregarding a traffic lane. *See* 75 Pa.C.S.A. §§ 3736(a), 3714, 3361, 3310(a), and 3309(1), respectively.

Pennsylvania State Trooper Peter Gutowski arrived at the accident scene at approximately 5:45 p.m. Trooper Gutowski testified that [Huggins] seemed dazed and confused, and that [Huggins] allegedly admitted to Trooper Gutowski that he had momentarily fallen asleep while driving, which the Trooper later determined to be the cause of the accident. Trooper Gutowski's investigation also showed that [Huggins's] van had only 15 seats, yet there had been 24 occupants in the van when the accident occurred. Of the 24 occupants, 21 were juveniles, with 20 under the age of 12 years old. At least sixteen of the passengers in the van were injured in the accident, and two of the van's passengers were pronounced dead later that evening. The autopsy reports of Janine Ocean and Michael Channell indicate that both were passengers in [Huggins's] van, and that they both died as the result of multiple injuries sustained during the accident. The autopsy lists the cause of death for both people as being accidental.

An accident reconstructionist, Pennsylvania State Trooper Brian Vaddell, arrived at the accident site after dark on that same evening. Using the van's skid marks and the friction coefficient of the roadway, Trooper Vaddell calculated that [Huggins] was travelling at a speed of at least 78 miles per hour following the impact with Mr. Bayly's Saturn. The speed limit for that portion of Interstate 80 was posted at 55 miles per hour. Trooper Vaddell determined that none of the van's passengers were wearing seat belts when the accident occurred.

From his initial investigation, Trooper Vaddell concluded that the accident was caused by [Huggins's] falling asleep.

Trial Court Opinion, 3/31/00, at 1–2.

¶ 5 After the hearing, the trial court granted Huggins's Motion to dismiss the involuntary manslaughter charges. The trial court reasoned that, to prove the charge of involuntary manslaughter, the Commonwealth would be required to establish that Huggins consciously created a risk that serious injury or death would result from his conduct, or at least that Huggins could have reasonably anticipated that death or serious injury would result from his conduct. *Id.* at 8–9. The trial court concluded that the Commonwealth failed to establish either of these propositions. According to the trial court, "the Commonwealth has presented no evidence indicating that [Huggins] had any reason to believe that he was dangerously tired before falling asleep and causing the accident." *Id.* at 9.

¶ 6 The trial court additionally granted Huggins's Motion to suppress evidence as to whether the passengers were wearing seat belts at the time of the accident. The trial court concluded that 75 Pa.C.S.A. § 4581(f) [3] precludes the introduction of such evidence. *Id.* at 17–18. Thereafter, the Commonwealth filed the instant appeal, certifying that the trial court's Order terminated or substantially handicapped its prosecution of Huggins.[4]

¶ 7 The Commonwealth raises the following two claims on appeal:

I. Whether the trial court erred in failing to determine that sufficient evidence had been presented at the preliminary hearing to sustain a

---

3. Section 4581(f) precludes the use of evidence related to seatbelt use in cases other than those involving the violation of that section.

4. *See* Pa.R.A.P. 311(d) (allowing an interlocutory appeal as of right where the Commonwealth certifies that the trial court's order will terminate or substantially handicap the prosecution).

*prima facie* case on two counts of involuntary manslaughter?

II. Whether the trial court erred in suppressing evidence that small children unrestrained by seat belts were seated on the floor of [Huggins's] overloaded van at the time of impact with another vehicle.

Commonwealth's Brief at viii.[5]

¶ 8 Initially, we note that Huggins's Motion to dismiss the involuntary manslaughter charges was in the nature of a *habeas corpus* petition. N.T., 2/16/2000, at 3. "[A] petition for writ of *habeas corpus* is the proper means for testing a pretrial finding that the Commonwealth has sufficient evidence to establish a *prima facie* case." *Commonwealth v. Saunders,* 456 Pa.Super. 741, 691 A.2d 946, 948 (1997) (citation omitted). "The decision to grant or deny a petition for writ of habeas corpus will be reversed on appeal only for a manifest abuse of discretion." *Commonwealth v. Karlson,* 449 Pa.Super. 378, 674 A.2d 249, 250–51 (1996).

¶ 9 At the preliminary hearing, the Commonwealth need not prove the defendant's guilt beyond a reasonable doubt. *Commonwealth v. Kowalek,* 436 Pa.Super. 361, 647 A.2d 948, 949 (1994).

Rather, the Commonwealth must show sufficient probable cause that the defendant committed the offense, and the evidence should be such that if presented at trial, and accepted as true, the judge would be warranted in allowing the case to go to the jury.

*Id.*

¶ 10 The Crimes Code defines the crime of involuntary manslaughter as follows:

[A] person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S.A. § 2504. Under the Crimes Code, a person acts recklessly, with respect to a material element of an offense,

when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). A "substantial" risk is one that increases the likelihood of harm to such a significant degree that disregarding this risk is seen as criminal conduct. *See Commonwealth v. Mastromatteo,* 719 A.2d 1081, 1084 (Pa.Super.1998).

¶ 11 The Crimes Code does not define the term "grossly negligent," a term used in the involuntary manslaughter statute. *See* 18 Pa.C.S.A. § 2504. However, in *Commonwealth v. Lobiondo,* 501 Pa. 599, 462 A.2d 662 (1983), our Supreme Court concluded that the legislature has equated the term "gross negligence" with "recklessness," rather than with mere negligence.[6] *Id.* at 604, 462 A.2d at 665.

---

**5.** The Commonwealth does not challenge the trial court's dismissal of the charges of aggravated assault and REAP. On appeal, Huggins does not challenge the trial court's denial of his motion to dismiss the homicide by vehicle charges.

**6.** Section 302(b) of the Crimes Code, which defines the culpability standards used in the

¶ 12 The Commonwealth presented evidence that Huggins fell asleep while driving, that his 15–passenger van carried 24 occupants, and that he was driving at least 78 miles per hour in a zone posted for a maximum speed of 55 miles per hour. The question before us is whether this evidence establishes a *prima facie* case that Huggins "consciously disregarded a substantial and unjustifiable risk" that death would result from his actions. We conclude that it does not.

¶ 13 In this case, the Commonwealth presented evidence that, at the time of the accident, Huggins's vehicle was traveling in excess of the posted speed limit. It has long been the law of this Commonwealth that "conduct made unlawful by the Vehicle Code is not necessarily the kind of "unlawful act" included within the definition of involuntary manslaughter, for in many instances, the [Vehicle Code] makes unlawful, ordinary negligence." *Commonwealth v. Busler*, 445 Pa. 359, 361, 284 A.2d 783, 784 (1971); *accord Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593 (1998); *Commonwealth v. Cienkowski*, 290 Pa.Super. 415, 434 A.2d 821, 822 (1981). By driving in excess of the speed limit, Huggins's conduct may establish negligence, but it does not, standing alone, establish the *mens rea* of recklessness, which is a necessary element of involuntary manslaughter. Likewise, we cannot conclude that Huggins "consciously disregarded a substantial and unjustifiable risk" that death would result from his actions, as required by section 2504, when he transported 24 passengers in a van designed to carry 15 passengers. Accordingly, we must consider whether the fact that Huggins fell asleep, while driving under such circumstances, is sufficient to establish reckless conduct for purposes of section 2504.

¶ 14 This Court has held that falling asleep while operating a motor vehicle constitutes careless driving. *See Commonwealth v. Petroll*, 696 A.2d 817, 823 (Pa.Super.1997), *affirmed*, 558 Pa. 565, 738 A.2d 993 (1999);[7] *Commonwealth v. Cathey*, 435 Pa.Super. 162, 645 A.2d 250, 250–51 (1994). The *mens rea* for careless driving, a violation of the Vehicle Code, is a careless disregard of the rights and safety of others. *Commonwealth v. Wood*, 327 Pa.Super. 351, 475 A.2d 834, 836 (1984). Although the Vehicle Code does not define "careless disregard," in a case involving the offense of reckless driving, this Court has stated:

> The 1951 amendment [to the Vehicle Code] redefined reckless driving by eliminating *wanton* or *willful* conduct in the operation of a vehicle as an essential element of the offense. But in doing so[,] it is clear that the legislature did not intend to increase a driver's responsibility for ordinary negligence by reclassifying mere negligence as reckless driving. What was contemplated in the language *"carelessly disregarding the rights and safety of others, or in a manner so as to endanger any person or property "* was to set the minimal requisite of reckless driving *at less than willful and wanton conduct on the one hand*

---

Crimes Code, states that a person acts negligently, with respect to a material element of a crime, when he or she "should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(4). This is the lowest degree of culpability set forth in the Crimes Code.

7. The Supreme Court granted review of our decision in *Petroll* "solely to determine whether the trial court erred in denying Appellant's motion to suppress the evidence seized from Appellant's tractor-trailer during the course of the two warrantless searches." *Petroll*, 558 Pa. at 574, 738 A.2d at 999.

*and, on the other, something more than ordinary negligence or mere absence of care under the circumstances.*

*Id.* (citing *Commonwealth v. Forrey,* 172 Pa.Super. 65, 92 A.2d 233, 234 (1952)) (emphasis added). "Therefore careless disregard is the equivalent of culpable negligence." *Wood,* 475 A.2d at 836. As set forth above, ordinary negligence involves a lower degree of culpability than recklessness. *Lobiondo,* 501 Pa. at 604, 462 A.2d at 665. Although the act of falling asleep while driving evidences a careless disregard of the safety of others, it does not, standing alone, demonstrate a "conscious disregard" of a substantial and unjustifiable risk, *i.e.,* recklessness or gross negligence.

¶ 15 The victims in this case were passengers in the offending driver's vehicle, unlike in *Petroll* and *Cathey,* where the victims were riding in other vehicles. However, this is a distinction without a difference. The location of the victim in a motor vehicle accident caused by a driver who falls asleep at the wheel does not affect the driver's intent, nor does it create a more serious risk. The lives of all persons driving, riding, or walking on a road are subject to the control and care of other drivers.

¶ 16 Despite the tragic circumstances of this case, we are constrained to agree with the trial court that, to establish the *mens rea* of recklessness, the Commonwealth must present evidence that Huggins had reason to believe that he was dangerously tired before falling asleep. Without this evidence, the Commonwealth cannot establish that Huggins consciously disregarded a substantial and unjustifiable risk that death would result from his actions. The Commonwealth failed to present such evidence. On this basis, we affirm the trial court's dismissal of the charges of involuntary manslaughter.

 ¶ 17 In its second allegation of error, the Commonwealth claims that the trial court erred by suppressing evidence that the passengers in the van were not using seat belts. When we review the ruling of a suppression court, we must ascertain whether its factual findings are supported by the record and whether the inferences and legal conclusions drawn from those facts are reasonable. *Commonwealth v. Lewis,* 535 Pa. 501, 504, 636 A.2d 619, 621 (1994). Where the Commonwealth challenges an adverse ruling of the suppression court, we will consider only the evidence for the defense and whatever evidence for the prosecution that remains uncontradicted in context of the whole record. *Commonwealth v. Romine,* 453 Pa.Super. 42, 682 A.2d 1296, 1298 (1996) (*en banc*). If there is support in the record, we are bound by the facts as found by the suppression court, and we may reverse that court only if the legal conclusions drawn from these facts are in error. *Commonwealth v. Brundidge,* 533 Pa. 167, 170, 620 A.2d 1115, 1116 (1993).

¶ 18 Here, the trial court concluded that section 4581 of the Vehicle Code precludes the introduction of evidence regarding whether the occupants of a vehicle were wearing seat belts at the time of an accident. Section 4581 provides, in relevant part, as follows:

**SUBCHAPTER E. CHILD PASSENGER PROTECTION**

**§ 4581 Restraint systems.**

**(a) Occupant protection.—**

(1) Any person who is operating a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home and who transports a child under four years of age anywhere in the motor vehicle, including the cargo area, shall fasten such child se-

curely in a child passenger restraint system, as defined in subsection (d). This subsection shall apply to all persons while they are operators of motor vehicles where a seating position is available which is equipped with a seat safety belt or other means to secure the systems or where the seating position was originally equipped with safety belts.

(2) Except for children under four years of age and except as provided in paragraph (1), each driver and front seat occupant of a passenger car, Class I truck, Class II truck, classic motor vehicle, antique motor vehicle or motor home operated in this Commonwealth shall wear a properly adjusted and fastened safety belt system. A conviction under this paragraph by State or local law enforcement agencies shall occur only as a secondary action when a driver of a motor vehicle has been convicted of any other provision of this title. The driver of a passenger automobile shall secure or cause to be secured in a properly adjusted and fastened seat belt system any occupant in the front seat who is four years of age or older and less than 18 years of age....

(f) **Criminal proceedings.**—The requirements of this subchapter or evidence of a violation of this subchapter [Subchapter E] are not admissible as evidence in a criminal proceeding **except in a proceeding for a violation of this subchapter.** No criminal proceeding for the crime of homicide by vehicle shall be brought on the basis of noncompliance with this subchapter.

75 Pa.C.S.A. § 4581 (emphasis added).[8] Thus, under this section, seat belt evidence may be used to prove a violation 75 Pa. C.S.A. § 4581, *i.e.*, that (1) the vehicle operator failed to secure a child in the vehicle, under the age of four, in a child passenger restraint system; (2) the driver or front seat occupant was not wearing a seat belt, or (3) the driver failed to secure a child, who is between the ages of 4 and 18, who is riding in the front seat. *Id.* Evidence of seat belt use may be admissible at trial, so long as it does not establish a violation of section 4581(f).

¶ 19 In the instant case, the Commonwealth presented evidence that the van had only 15 seats, 24 occupants were in the van, 21 of the 24 occupants were juveniles or children, 20 of the 21 children were under age 12, at least 16 passengers were injured, two of the passengers died, and none of the occupants wore seat belts. *See* N.T., 9/2/99, at 44, 51, 63, 72, 78. The record is unclear as to how many occupants were under age 4, and how many occupants were in the front seat.

¶ 20 The trial court precluded all evidence that any passengers were unbelted, without taking into account the age or position of the occupants in the van. Because the trial court's suppression Order is overbroad, we reverse.[9] On remand, the trial court is directed to take into account the age and seating positions

---

8. We note that section 4581 is the only relevant section of Subchapter E.

9. Under the plain language of the statute, the protection afforded by section 4581 is limited to evidence of a violation of the seat belt law. Accordingly, evidence of non-seat belt use is permitted for those who are over four years of age and are in the back seats of the vehicle. While the legislature may not have intended this result, we are constrained to interpret the statute as it is unambiguously written. *Commonwealth v. McKinney*, 772 A.2d 1023, 1025 (Pa.Super.2001) ("as an intermediate appeals court, the result we reach is all that we are empowered to do").

of the occupants before determining whether evidence of seat belt non-use is prohibited by Section 4581(f).

¶ 21 Affirmed in part; reversed in part; remanded for further proceedings; jurisdiction relinquished.

¶ 22 STEVENS, J., joins in part.

¶ 23 LALLY–GREEN, J., joins in part.

¶ 24 McEWEN, President Judge Emeritus, joins in part.

¶ 25 LALLY–GREEN, J., files a Concurring and Dissenting Opinion.

¶ 26 JOYCE and STEVENS, JJ., join LALLY–GREEN'S Concurring and Dissenting Opinion.

¶ 27 McEWEN, President Judge Emeritus, files a Concurring and Dissenting Statement.

¶ 28 CAVANAUGH, J., files a Dissenting Statement.

LALLY–GREEN, J., Concurring and Dissenting.

¶ 1 I join in the Majority's disposition of the seat belt issue. As to the issue of whether the Commonwealth presented a *prima facie* case of recklessness for purposes of the involuntary manslaughter statute,[10] I respectfully dissent.

¶ 2 For purposes of this Concurring and Dissenting Opinion, I will assume that the Majority has properly determined that the involuntary manslaughter statute requires a showing of recklessness rather than criminal negligence.[11] Section 302(b)(3) of the Crimes Code defines when a person acts in a reckless manner:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his

10. The involuntary manslaughter statute provides:

a person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S.A. § 2504.

11. The Majority properly notes that under our Supreme Court's precedent, "gross negligence" for purposes of the involuntary manslaughter statute is equivalent to recklessness, rather than the less culpable mental state of criminal negligence. Majority Opinion at 1046, *citing, Commonwealth v. Lobiondo*, 501 Pa. 599, 602–04, 462 A.2d 662, 664 (1983); *see also, Commonwealth v. Comer*, 552 Pa. 527, 533–35, 716 A.2d 593, 597 (1998). For several reasons, I would respectfully urge our Supreme Court to revisit this issue, and clarify this area of the law if it deems necessary. First, it would appear that our Supreme Court's ruling to this effect was *dicta* in both *Comer* and *Lobiondo*. Next, because the involuntary manslaughter statute uses the phrase "reckless **or** grossly negligent," it can be ar-

gued that the two terms are distinct and not mere synonyms. *See, Commonwealth v. Lassiter*, 554 Pa. 586, 591–93, 722 A.2d 657, 660 (1998) (rules of statutory construction provide that "each word by the Legislature has meaning and was used for a reason, not as mere surplusage"). Third, I would note that involuntary manslaughter is graded as a first-degree misdemeanor, just as is homicide by vehicle. Homicide by vehicle requires a mental state only of criminal negligence. *Comer*, 552 Pa. at 538 n. 14, 716 A.2d at 599 n. 14. Finally, in *Commonwealth v. Samuels*, 566 Pa. 109, 113 n. 5, 778 A.2d 638, 641 n. 5 (2001), our Supreme Court recently cited with approval a trial court's jury instruction on involuntary manslaughter which largely tracked the definition of criminal negligence under 18 Pa.C.S.A. § 302(b)(4). *See also, id.* at 113, 778 A.2d at 641 "the jury's finding of guilt as to involuntary manslaughter necessarily included a finding of criminal negligence"; *id.* at 148, 778 A.2d at 663 (Newman, J., concurring and dissenting) (the phrase "recklessly or with gross negligence" demonstrates the Legislature's intent to require criminal negligence as a culpable mental state).

conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3). "Conscious disregard" of a risk involves first becoming aware of the risk, and then choosing to proceed in spite of that risk. *Commonwealth v. Miller*, 385 Pa.Super. 186, 560 A.2d 229, 234 (1989). A "substantial" risk is one that increases the likelihood of harm to such a significant degree that disregarding this risk is seen as criminal conduct. *See, Commonwealth v. Mastromatteo*, 719 A.2d 1081, 1084 (Pa.Super.1998). An "unjustifiable" risk is one which is unwarranted, indefensible, and lacking a reasonable excuse. *See,* Black's Law Dictionary (6th ed.1990) at 865 (defining "justifiable" and "justification").

¶ 3 Our courts have examined the level of culpability where a person falls asleep at the wheel and thereby causes death or injury. Both our Supreme Court and this Court have determined that falling asleep at the wheel can constitute criminal negligence for purposes of the homicide by vehicle or careless driving statutes.[12] *See, Commonwealth v. Petroll*, 558 Pa. 565, 586–88, 738 A.2d 993, 1005 (1999) (truck driver fell asleep at the wheel and collided with the back of a car, killing the occupants; Commonwealth established criminal negligence for purposes of homicide by vehicle); *Commonwealth v. Cathey*, 435 Pa.Super. 162, 645 A.2d 250, 251–252 (1994) (driver fell asleep, collided with another vehicle and injured the occupant; Commonwealth established criminal negligence for purposes of careless driving).

¶ 4 Thus, as the Majority correctly notes, our case law has not yet held that falling asleep at the wheel constitutes recklessness. On the other hand, our case law has not held that falling asleep can **never** constitute recklessness. In my view, this question is to be decided on a case-by-case basis, paying close attention to those facts which bear on the issue of whether the driver acted recklessly, *i.e.,* consciously disregarded a substantial and unjustifiable risk of death by falling asleep at the wheel.[13] Moreover, under the specific circumstances of this case, I would hold that the Commonwealth did establish a *prima facie* case of recklessness.

¶ 5 First, in *Cathey*, this Court reasoned that people generally fall asleep in stages and with warnings:

In a normal human being sleep does not come without warning. Before sleep

12. The homicide by vehicle statute provides:

"Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death."

75 Pa.C.S.A. § 3732. The careless driving statute provides: "a person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense." 75 Pa.C.S.A. § 3714.

13. Such an examination might include, without limitation, consideration of the following factors: the warning signs of sleep that the defendant consciously disregarded; the mechanical condition of his vehicle; the number and age of the occupants of his vehicle; the manner in which the passengers were seated; the safety restraints used by his passengers; the conditions on the road; the weather; the likelihood that someone else could have avoided the risk; and the speed at which the defendant was traveling.

there is drowsiness and before drowsiness there is usually great fatigue of at least a desire to sleep. Human affairs would be in a precarious state if locomotive engineers, aviators, chauffeurs, motormen and others in charge of machinery in motion were liable to "fall asleep" at any time without first becoming consciously aware of sleep's approach and taking immediate steps to bring to a stop the mechanism under their control or placing it in the hands of one who is completely awake and alert. The Creator wisely provided that sleep does not come upon human beings unannounced....

... It is impossible to fathom how one who falls asleep while operating an automobile, thus blindly propelling thousands of pounds of steel and glass tens of miles per hour, cannot be guilty of a degree of negligence beyond mere 'absence of ordinary care.'

*Cathey*, 645 A.2d at 251–252 (emphasis added), *quoting*, *Bernosky v. Greff*, 350 Pa. 59, 60–61, 38 A.2d 35, 36 (1944).

¶ 6 I recognize that *Cathey* concerned the issue of criminal negligence, rather than recklessness.[14] On the other hand, the reasoning set forth in *Cathey* suggests that by continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways.

¶ 7 Even if this is not necessarily true in every case, additional facts of Huggins' particular case provide ample evidence from which a jury could reasonably conclude that Huggins acted recklessly. The nature and intent of Huggins' conduct and the circumstances known to him were as follows. Huggins knew that his van was overloaded because he was driving a 15–passenger van in which 23 passengers were riding. Huggins knew that 20 of the passengers were children under 12 years of age. Huggins knew that at least nine of his passengers were not seated in seats at all and that many, if not most, of his passengers were not wearing safety restraints. Huggins knew it was a clear and sunny day when he "momentarily" fell asleep at 5:15 p.m. in his speeding van.[15]

¶ 8 I would also observe that the risk of death caused by falling asleep at the wheel was less palpable in *Petroll* and *Cathey* than in Huggins' case. In *Petroll* and *Cathey*, each driver's risk of causing death by falling asleep at the wheel involved people **outside** of the driver's vehicle, *e.g.*, occupants of other vehicles (and perhaps pedestrians) who, by chance, were in the path of the sleeping driver's careening vehicle. In Huggins' case, the driver's risk of causing death by falling asleep at the wheel involved people **inside** (as well as **outside**) of the vehicle. Twenty-three passengers, 20 of them under the age of 12, were not potential victims by chance; they were potential victims of a driver who knew they were there and a driver who knew that they were subject to his control of the van. Unlike the Majority, I believe this is a highly relevant factor in determining whether a driver acts recklessly. Because I believe that the Commonwealth presented a *prima facie* case of recklessness for purposes of the involuntary man-

---

14. We also note that the trial court in *Cathey* acquitted the defendant of reckless driving, a charge which requires a showing of conscious disregard of the risk. *Cathey*, 645 A.2d at 253. As a result, the *Cathey* Court did not determine whether falling asleep at the wheel could constitute recklessness.

15. The record reflects that Huggins was traveling 23 m.p.h. over the posted speed limit. My review of the record does not indicate that he "knew" the degree to which he was speeding.

slaughter statute, I must respectfully dissent.

McEWEN, President Judge Emeritus, Concurring and Dissenting.

¶ 1 While I hasten to join in the erudite opinion of the majority affirming the ruling of the distinguished Judge Linda Wallach Miller which dismissed the charges of involuntary manslaughter, I am unable to join in that portion of the ruling of the majority which reverses the ruling of the trial court and thereby permits the introduction of evidence of the non-use of seat belts by the occupants of the vehicle. Rather, I share the view of the trial court that Section 4581(f) of the Vehicle Code compels the exclusion of any reference by the Commonwealth to the non-use of seat belts by the van passengers, 75 Pa.C.S. § 4581(f). It merits emphasis that such an exclusion would not, however, preclude the Commonwealth from introduction of evidence that the children were sitting on the floor of the van at the time of the accident.

CAVANAUGH, J., Dissenting.

¶ 1 I respectfully dissent as I would find that the proffered evidence is sufficient to support a verdict of involuntary manslaughter. I would further hold that the seat belt evidence is not the proper subject of a motion to suppress evidence.