836 A.2d 862

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Gary R. HUGGINS, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 2002.

Decided Nov. 19, 2003.

Elmer D. Christine, Mark Peter Pazuhanich, Stroudsburg, for appellant, Com. of PA.

Lawrence A.J. Spegar, for appellee, Gary R. Huggins.

Before: CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice CASTILLE.

The issue in this appeal is whether a *prima facie* case of involuntary manslaughter was made where the Commonwealth demonstrated that appellee fell asleep at the wheel of his speeding 15–passenger van, which was overloaded with twenty-one children and three adults, leading to a collision on the highway and the deaths of two children. We hold that the Commonwealth established a *prima facie* case of two counts of involuntary manslaughter and, accordingly, we reverse the courts below and remand for trial.

According to the evidence produced by the Commonwealth at the preliminary hearing, on July 10, 1998, at approximately 5:15 p.m. on a clear and sunny day, appellee was driving a Ford passenger van eastbound on Interstate Highway 80 in the Pocono Mountains when, by his own admission, he fell asleep. Appellee claimed he awoke just before the van collided with the rear end of a Saturn sedan driven by Charles P. Bayly. The front left section of the van struck the right rear portion of the Saturn, after which the van veered sharply to the right, crossed the right travel lane, and went onto the right shoulder of the road where it hit an embankment. The van rode up the embankment, flipped, and came to rest on its passenger side, half on the right shoulder of the highway, and half on the right lane of travel. At the time of the collision, Mr. Bayly's Saturn was in the left lane of travel, traveling at approximately sixty to sixty-five miles per hour (m.p.h.). Mr. Bayly testified that he did not see appellee's van until the collision.

There were twenty-four occupants in the van, including appellee, twenty-one of whom were minors. All but one of the minors was under the age of twelve. Two of the children were killed in the crash and numerous others were taken to various hospitals with injuries. Because the van had only fifteen passenger seats, some of the twenty-three passengers were crowded into seats while others were seated on the floor. A subsequent investigation by an accident reconstruction expert revealed that, at the time of the collision, none of the passengers was restrained by a seatbelt and appellee's approximate speed was at least seventy-eight m.p.h., well in excess of the posted speed limit of fifty-five m.p.h.

On August 16, 1999, appellee was charged with twenty-three counts of aggravated assault, 18 Pa.C.S. § 2702(a)(1), two counts of involuntary manslaughter, 18 Pa.C.S. § 2504(a), two counts of homicide by vehicle, 75 Pa.C.S. § 3732, twenty-three counts of recklessly endangering another person, 18 Pa.C.S. § 2705, and various summary driving offenses. Following the preliminary hearing, all of the charges were bound over for trial. On December 29, 1999, appellee filed an omnibus pre-

trial motion requesting, *inter alia*, that the trial court grant *habeas corpus* relief and dismiss the charges of aggravated assault, involuntary manslaughter, reckless endangerment, and homicide by vehicle because the Commonwealth had failed to establish a *prima facie* case. In addition, appellee sought to suppress any evidence relating to whether seatbelts had been used by the passengers in the van.

On February 16, 2000, the trial court granted the motion to suppress evidence regarding seat belts, holding that any such evidence was barred by 75 Pa.C.S. § 4581(f).[1] Turning to appellee's request for *habeas corpus* relief, the court held that the Commonwealth had met its *prima facie* burden for the charges of homicide by vehicle, but dismissed the charges of aggravated assault, involuntary manslaughter, and reckless endangerment. With respect to the dismissal of the involuntary manslaughter charges—the ruling at issue on this appeal—the trial court held that the Commonwealth had failed to make out a *prima facie* case for the *mens rea* (recklessness or gross negligence) necessary to support such a charge.

■■■■ The Commonwealth appealed, challenging the suppression of the seatbelt evidence and the dismissal of the involuntary manslaughter charges.[2] A divided *en banc* panel of the Superior Court affirmed in part and reversed in part in a published opinion. *Commonwealth v. Huggins*, 790 A.2d 1042 (Pa.Super.2002). The panel majority, in an opinion by

1. Section 4581 of the Motor Vehicle Code governs restraint systems. Subsection (f) provides:

   The requirements of this subchapter or evidence of a violation of this subchapter are not admissible as evidence in a criminal proceeding except in a proceeding for a violation of this subchapter. No criminal proceeding for the crime of homicide shall be brought on the basis of non-compliance with this subchapter.

   75 Pa.C.S. § 4581(f).

2. We note that the appropriate procedural means by which the accused may challenge the sufficiency of the Commonwealth's evidence at the pre-trial stage is a petition for a writ of *habeas corpus*. *See Commonwealth v. Hetherington*, 460 Pa. 17, 331 A.2d 205, 209 (1975). When a charge is dismissed on a pre-trial writ of *habeas corpus*, the Commonwealth may appeal. *See, e.g., Commonwealth v. Hess*, 489 Pa. 580, 414 A.2d 1043, 1047 (1980).

Judge Musmanno, reversed the suppression order regarding usage of the seatbelts, finding that the order was overbroad, but affirmed the dismissal of the involuntary manslaughter charges, finding that the Commonwealth had failed to show that appellee had consciously disregarded a substantial and unjustifiable risk that death would result from his actions. The majority recognized that the involuntary manslaughter statute appears to set forth disjunctive bases for establishing the mental state necessary for conviction—*i.e.*, recklessness **or** gross negligence. The majority noted, however, that this Court had suggested that the terms were equivalent.[3] Accordingly, the majority examined the sufficiency of the Commonwealth's proof of recklessness, ultimately concluding that affirmance was appropriate because the Commonwealth had failed to prove that appellee "had reason to believe that he was dangerously tired before falling asleep."

Judge Lally–Green filed a concurring and dissenting opinion, joined by Judges Joyce and Stevens, joining in the majority's disposition of the seatbelt evidence suppression issue, but dissenting on the involuntary manslaughter issue. Accepting the majority's equivalence of recklessness and gross negligence for purposes of the appeal,[4] Judge Lally–Green noted that the Crimes Code's definition of "recklessness" contemplates that the actor engaged in a conscious disregard of a substantial and unjustifiable risk that the material element at issue exists or will result from his conduct. *Huggins*, 790 A.2d at 1050–51 (Lally–Green, J., concurring and dissenting). "Conscious disregard" of a risk, in turn, involves first becoming aware of the risk and then choosing to proceed in spite of the risk. *Id.* at 1051. Judge Lally–Green further noted that Pennsylvania courts had determined that falling asleep at the wheel can constitute criminal negligence for purposes of the homicide by vehicle and careless driving statutes but, in her view, it was an open question whether, in

3. *See* discussion *infra.*

4. In a footnote, however, Judge Lally–Green "respectfully urge[d]" that this Court revisit the question of whether recklessness and gross negligence describe the same mental state. *Huggins*, 790 A.2d at 1050 n. 11 (Lally–Green, J., concurring and dissenting).

some circumstances, falling asleep at the wheel alone might also support a finding of recklessness. *Id.* In this regard, Judge Lally–Green cited to court decisions recognizing that people generally fall asleep in stages and with warnings. *See Commonwealth v. Cathey,* 435 Pa.Super. 162, 645 A.2d 250, 251–52 (1994) (quoting *Bernosky v. Greff,* 350 Pa. 59, 38 A.2d 35, 36 (1944)). Judge Lally–Green noted that in her view "by continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways." *Huggins,* 790 A.2d at 1052. Judge Lally–Green further reasoned that, even if it is not necessarily reckless to fall asleep at the wheel in every instance, the additional facts attending this case—speeding at the wheel of a van overloaded with people, the majority of whom were children not wearing safety restraints—provided ample evidence from which a jury could reasonably conclude that appellee had acted recklessly. *Id.*

President Judge Emeritus McEwen filed a concurring and dissenting statement joining the majority on the disposition of the involuntary manslaughter issue but dissenting from the reversal of the suppression order. Judge Cavanaugh filed a dissenting statement, noting his view that the evidence proffered by the Commonwealth was sufficient to support verdicts of involuntary manslaughter and that the seat belt evidence was not the proper subject of a motion to suppress.

■ This Court granted the Commonwealth's petition for allowance of appeal from that portion of the Superior Court order upholding the dismissal of the involuntary manslaughter charges. The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law as to which this Court's review is plenary.

The Crimes Code defines involuntary manslaughter as follows:

A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a

reckless or grossly negligent manner, he causes the death of another person.

18 Pa.C.S. § 2504(a). Involuntary manslaughter is the least culpable level of homicide defined in the Crimes Code, *see id.* §§ 2501–2504, and is commensurately graded lower than other forms of homicide: *i.e.,* it is a misdemeanor of the first degree, unless the victim is under the age of twelve and was in the care, custody or control of the person who caused the death, in which case it is graded as a felony of the second degree. *Id.* § 2504(b).

▮▮▮ At the pre-trial stage of a criminal prosecution, it is not necessary for the Commonwealth to prove the defendant's guilt beyond a reasonable doubt, but rather, its burden is merely to put forth a *prima facie* case of the defendant's guilt. *Commonwealth v. McBride,* 528 Pa. 153, 595 A.2d 589, 591 (1991). A *prima facie* case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense. *Id.* (citing *Commonwealth v. Wojdak,* 502 Pa. 359, 466 A.2d 991 (1983)). The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury. *Commonwealth v. Marti,* 779 A.2d 1177, 1180 (Pa.Super.2001). Moreover, "[i]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Id.* at 1180 (quoting *Commonwealth v. Owen,* 397 Pa.Super. 507, 580 A.2d 412, 414 (1990)). In the case *sub judice,* there is no dispute that the Commonwealth established that two children died as a result of appellee's conduct in driving the van. The sole issue is whether the *mens rea* element of the statute was satisfied, *i.e.,* whether the Commonwealth produced *prima facie* evidence that the deaths caused by appellee were the result of an act undertaken in a reckless or grossly negligent manner.

The Commonwealth contends that it presented sufficient *prima facie* evidence that appellee acted with recklessness or,

alternatively, with "criminal negligence." In forwarding this two-pronged argument, the Commonwealth equates the "gross negligence" state of mind set forth in the involuntary manslaughter statute with the negligence standard set forth in the general culpability section of the Crimes Code, *i.e.*, 18 Pa.C.S. § 302, which the Commonwealth characterizes as "criminal negligence." The Commonwealth argues that, in the right circumstances, falling asleep at the wheel alone may amount to criminal negligence, but then stresses that here appellee did more than simply fall asleep at the wheel. Rather, appellee did so while driving a van full of children—indeed, a van severely overloaded with children, at least some of whom were not seated in the van's seats, much less protected by safety restraints. The risks attending that initial reckless decision, the Commonwealth submits, should have counseled "strict compliance" with the traffic laws and yet appellee "compounded his initial recklessness" by intentionally driving at an excessive rate of speed directly before he fell asleep. The Commonwealth further argues that the Superior Court erred by failing to consider the totality of the circumstances in assessing appellee's mental state. The Commonwealth submits that its evidence, viewed in its entirety, proved a *prima facie* case of appellee's having acted recklessly or with criminal negligence.

Appellee responds that the Commonwealth produced no evidence that he ignored warning signs of impending sleep, such as yawning or drowsiness, prior to his falling asleep at the wheel. Appellee also notes that the Commonwealth produced no evidence of other circumstances that might have suggested an enhanced likelihood of a sudden onset of sleep— such as a previous lack of sleep, recent alcohol use, or strenuous physical activity. Citing to cases involving charges of aggravated assault or murder, appellee also suggests that involuntary manslaughter requires a showing of "a much higher degree of culpability than merely reckless behavior." Appellee articulates this heightened requirement in various ways: "a sustained purposeful recklessness," or "knowingly tak[ing] a gamble that an accident is likely to happen." Ap-

pellee does not respond to the argument of the Commonwealth, and the suggestion by Judge Lally–Green below, that a showing of a level of conduct less than recklessness may suffice, given the statute's reference to gross negligence.

We begin by addressing the Commonwealth's argument that what it terms "criminal negligence" suffices to discharge the Commonwealth's burden to prove the necessary *mens rea.* The involuntary manslaughter statute speaks in terms of "gross negligence." Section 302 of the Code, which sets forth the general requirements for culpability, and which the Commonwealth looks to for its definition of "criminal negligence," does not define "gross negligence," nor even "criminal negligence," but instead employs the bare term "negligently," which it defines as follows:

> A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(4). The negligence required to merit criminal sanctions under Section 302 is certainly a heightened deviation from the standard of care applicable when civil tort liability is at issue, and it may indeed be convenient to refer to this heightened level of conduct as "criminal negligence," even though the Code does not employ that terminology. However, the fact that criminal negligence differs from tort negligence does not mean that the negligence defined in Section 302 of the Code is the equivalent of the "gross negligence" contemplated in Section 2504. If the General Assembly had intended for Section 302 negligence to be sufficient to establish the *mens reas* necessary for involuntary manslaughter, it need not have added the modifier "gross." Given the principle of statutory construction requiring that we view the language of a statute in such a way as to give effect to all of its terms, *see*

1 Pa.C.S. § 1921(a); *Commonwealth v. Gilmour Mfg. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003), we cannot construe the reference to "gross negligence" in Section 2504 as requiring mere proof of the "negligent" (or "criminally negligent") state of mind defined in Section 302.

As Judge Lally–Green noted below, as a theoretical matter, there may be some gradation of negligence greater than that set forth in Section 302, but less culpable than recklessness, which could be encompassed by the term "gross negligence." However valid that point may be in theory, this Court's task is decisional. And, as the Superior Court majority below properly noted, this Court has construed the terms "reckless" and "grossly negligent" as defining the equivalent state of mind for purposes of the involuntary manslaughter provision. *See Commonwealth v. Comer*, 552 Pa. 527, 716 A.2d 593, 597 (1998) (definition of "recklessly" set forth in Section 302 "encompasses" gross negligence set forth in Section 2504) (citing *Commonwealth v. Lobiondo*, 501 Pa. 599, 462 A.2d 662 (1983)). There are sound reasons for this conclusion. First, the General Assembly did not separately define the concept of gross negligence either in the involuntary manslaughter statute itself or in the default provisions of the Crimes Code setting forth general requirements of culpability. If we were to recognize the theoretical distinction posed, there would be no statutory guidance as to the contours of this additional basis for the imposition of criminal liability. Given the requirement that penal statutes be strictly construed, 1 Pa.C.S. § 1928(b)(1); *Commonwealth v. Tate*, 572 Pa. 411, 816 A.2d 1097, 1098 (2003), this Court cannot devise an extra-statutory basis for criminal liability.[5] Furthermore, it is significant that although the General Assembly employed a disjunctive here (reckless or grossly negligent), it did not establish a different

---

**5.** In *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001), this Court noted that the strict construction principle means that:

> [W]here ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the accused.... More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt.

Id. at 846 (citations omitted).

consequence attending a finding of "grossly negligent involuntary manslaughter" versus "reckless involuntary manslaughter." Rather, the offense is generally graded as a misdemeanor of the first degree, with an enhancement to felony grading only if the victim was under twelve years of age and was in the care, custody or control of the defendant. 18 Pa.C.S. § 2504(b). *Contrast, e.g., Comer,* 716 A.2d at 597 (lesser degree of recklessness is required for involuntary manslaughter than for aggravated assault since assault requires recklessness "under circumstances manifesting extreme indifference to the value of human life"; distinction is logical since aggravated assault is graded as second degree felony while involuntary manslaughter is, in most instances, first degree misdemeanor).

We likewise reject appellee's suggestion that some heightened form of recklessness is required for the Commonwealth to prove involuntary manslaughter. The plain language of Section 2504 suggests no such heightened requirement. Moreover, as the reasoning in *Comer* teaches, the General Assembly is perfectly capable of drafting a statute, such as the aggravated assault statute, which requires a showing of more than mere recklessness, when such is its intent. It did not do so in defining involuntary manslaughter. Appellee's citations to various cases involving aggravated assault or third degree murder, therefore, are inapposite.

To decide the issue raised in this matter, we must analyze the Crimes Code's general definition of "recklessly," which reads as previously stated:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(3). The question for review becomes whether the Commonwealth produced *prima facie* evidence that, in operating the van in the circumstances that preceded the collision that resulted in the death of the two children, appellee disregarded a substantial and unjustifiable risk that the direct result of his behavior would be the death of one or more of his passengers or another person on the highway. We hold that the evidence was sufficient to support a *prima facie* finding of this element.

A motor vehicle can be a dangerous instrumentality. Driving is a correspondingly heavily regulated privilege, both as to licensure and the rules of the road, the regulation being a necessary concomitant of the dangers to self and others inherent in driving. The danger increases with the speed at which a vehicle is operated, since speed both reduces reaction times and heightens the consequences of any collision. The danger also may increase if other safety measures are ignored—whether those measures involve vehicle maintenance, internal safety features such as seating capacity or restraints, or the rules of the road. No driver can get behind the wheel without an acute awareness of the "responsible post of duty," *Bernosky*, 38 A.2d at 36, he is assuming.

Losing consciousness at the wheel differs in kind from the acts of momentary inadvertence or inattention that often occasion car accidents and are commonly encompassed in the term "negligence" in the tort arena. A momentary lapse leaves the driver unprepared for the unexpected or extraordinary. A loss of consciousness, on the other hand, leaves one totally unprepared even for the ordinary requirements for safe driving. Drivers have an unflagging duty either to remain vigilant and awake or to immediately desist from driving. It is therefore not surprising that this Court, like many other courts, has deemed the act of falling asleep at the wheel alone to be enough to raise a jury question of negligence in the tort arena. *See Bernosky*, 38 A.2d at 36.

Appellee appears to dispute this proposition, suggesting that without affirmative evidence from the Commonwealth that he had some warning that sleep was coming, little or no

inference of negligence or recklessness may be drawn from the admitted fact that he fell asleep. Of course, appellee is in the best and perhaps only position to know if the common signs of fatigue and impending sleep came upon him, which he ignored; the Commonwealth was not required to obtain a confession from appellee in order to make out its *prima facie* case. Rather, the Commonwealth could rely upon the fact that it is common knowledge that sleep is preceded by some internal warning. As Chief Justice Maxey noted in *Bernosky:*

> Any individual who falls asleep naturally, does so either willingly or through exhaustion. If he falls asleep willingly while driving an automobile he is, of course, negligent. If he drives an automobile while he is in such a state of exhaustion that he falls asleep though he does not will to do so, he is equally negligent, for he is chargeable with knowledge that an individual in a state of exhaustion is likely to fall asleep.

> In a normal human being sleep does not come without warning. Before sleep there is drowsiness and before drowsiness there is usually great fatigue or at least a desire to sleep. Human affairs would be in a precarious state if locomotive engineers, aviators, chauffeurs, motormen and others in charge of machinery in motion were liable to "fall asleep" at any time without first becoming consciously aware of sleep's approach and taking immediate steps to bring to a stop the mechanism under their control or placing it in the hands of one who is completely awake and alert. The Creator wisely provided that sleep does not come upon human beings unannounced. Therefore when a driver of an automobile falls asleep while driving, it is a legitimate inference that he was negligent either (1) in permitting himself to fall asleep while at such a responsible post of duty, or (2) if he possessed no such will power as would enable him to keep awake under the circumstances in not ceasing to drive the vehicle.

*Id.* Chief Justice Maxey went on to note that:

> Any other rule than this in respect to sleeping at the wheel must be rejected as contrary to the facts of life and as

condemned by sound considerations of public policy. For a driver to sleep at the wheel of a moving automobile makes him prima facie guilty of negligence. If there are any facts which under the circumstances tend to exculpate him from the charge of negligence, the burden of producing them is upon him.

*Id.*

The phenomenon of sleep has not much changed since *Bernosky*. Perhaps appellee has a colorable claim that he is the unusual person for whom sleep comes totally unannounced—although, if that is so, appellee no doubt was aware of that unusual phenomenon and should either have taken extra precaution or avoided this particular driving responsibility. Or perhaps appellee will claim that in this one instance no warning signs came in advance of his sleeping at the wheel. Such is a matter for defense, however; and the Commonwealth was entitled to rely upon "the facts of life" recognized by this Court in *Bernosky* in proving its *prima facie* case.

We recognize that *Bernosky* and like cases, since they sound in tort, were concerned only with the inference of negligence arising from sleeping at the wheel. However, such conduct also is probative of recklessness. Since we have concluded that it is fair to infer that, in falling asleep, appellee ignored the warning signs of sleep, the very fact that appellee fell asleep is evidence of a conscious decision to run that risk, with the concomitant risk of injury or death attending it, given his specific situation. As Judge Lally–Green persuasively reasoned below: "by continuing to drive after receiving the warning signs of sleep, a person does indeed consciously disregard a substantial risk of death on our highways." *Huggins*, 790 A.2d at 1052 (Lally–Green, J., concurring and dissenting). The risk of death posed by a sleeping driver of an automobile is obvious. It is a risk that any driver must appreciate before getting behind the wheel or continuing to drive.

We need not resolve the question of whether falling asleep alone is enough to raise a jury question of recklessness,

since the Commonwealth proved additional circumstances which revealed a conscious disregard of the serious risk involved here. Appellee allowed himself to fall asleep despite the fact that he was driving a van filled with children. The presence of these children would have led a prudent person to be extra-cautious; far from acting cautiously, however, appellee's van was filled to over-capacity and, in addition, the children were not secured with safety belts. Appellee elected to drive at an excessive rate of speed—at least twenty-three miles beyond the 55 m.p.h. speed limit—at the time he allowed himself to fall asleep. Each of these additional factors, beyond the mere fact of falling asleep at the wheel, increased the risk of collision, injury, and death. Moreover, each was a circumstance within appellee's knowledge and control. Viewed in their totality, the circumstances here reveal a pattern of conscious disregard for circumstances that placed the lives of these children in increasing danger. We are also satisfied that the Commonwealth proved that the circumstances here revealed a disregard of duty and risk which would warrant a jury in finding "a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation." Accordingly, we hold that the Commonwealth sufficiently proved a *prima facie* case of two counts of involuntary manslaughter so as to warrant submission of those charges to a jury.

For the foregoing reasons, we reverse the order of the Superior Court, we reinstate the charges of involuntary manslaughter, and we remand the matter to the Court of Common Pleas of Monroe County for trial. Jurisdiction is relinquished.

Former Chief Justice ZAPPALA did not participate in the consideration or decision of this case.