J-S55020-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JOHN QUACH, | : | |
| | : | |
| Appellee | : | No. 370 EDA 2014 |

Appeal from the Order Entered December 18, 2013,
In the Court of Common Pleas of Philadelphia County,
Criminal Division, at No. MC-51-CR-0041409-2012.

BEFORE: BOWES, SHOGAN and OTT, JJ.

MEMORANDUM BY SHOGAN, J.: **FILED JANUARY 26, 2015**

The Commonwealth of Pennsylvania ("the Commonwealth") appeals from the order entered on December 18, 2013, in the Philadelphia County Court of Common Pleas, that dismissed the criminal charges filed against John Quach ("Appellee"). We affirm.

The trial court set forth the underlying facts of this case as follows:

> Appellee, John Quach, was arrested and charged with Possession of a Controlled Substance, Possession of a Controlled Substance with Intent to Deliver (PWID), and Conspiracy to Manufacture, Delivery, or Possession with Intent to Manufacture or Deliver. The lower court dismissed the charges for lack of evidence on October 3, 2013. On November 7, 2013, the Commonwealth re-filed its criminal complaint listing identical charges. *See Criminal Docket Sheet*.
>
> On December 18, 2013, this Court held a preliminary re-file hearing. This Court, after hearing oral argument, agreed with

the lower court that the Commonwealth failed to make out a prima facie case on all charges.

* * *

The facts underlying the lower court's decision are as follows:

1. [Appellee's] brother was seen making a transaction and eventually a search warrant was executed at 4651 Rosehill Street. *Notes of Testimony, Preliminary Hearing Volume I, December 18, 2013, p. 5.*

2. In the middle bedroom of the house the officers found 100 packs of heroin in the closet, as well as a grinder, scale, stamper pad, and new and unused packaging. *Id.* The packaging and heroin found in the bedroom matched those from the earlier observed sales. *Id*. In the middle bedroom there was mail in [Appellee's] name. *Id*[.] *at 5-6.*

3. 4651 Rosehill Street is a family home. *Id*[.] *at 6.* There are five adults living in this house, including three adult children and the mother and father. *Id*.

4. There was no testimony that [Appellee] resided in the middle bedroom. *Id*[.] *at 7.* There were no clothes, sneakers, or other personal items tying [Appellee] to this room. *Id*.

5. At the preliminary re-file hearing, the Commonwealth failed to offer sufficient evidence indicating that [Appellee] occupied the middle bedroom. *Id*. [a]t 7-8.

Trial Court Opinion, 2/26/14, at 1-2 (footnotes omitted).

Following the trial court's December 18, 2013 order dismissing the charges against Appellee, the Commonwealth filed a timely appeal. On appeal, the Commonwealth raises one issue for this Court's consideration:

Should the charges of conspiracy, possession with the intent to distribute a controlled substance, and knowing and intentional

possession of a controlled substance charges be reinstated where the evidence, when properly viewed in the light most favorable to the Commonwealth, established a prima facie case that [Appellee] conspired to sell heroin out of his family home?

The Commonwealth's Brief at 1.

In reviewing the Commonwealth's issue, we are mindful that:

The preliminary hearing is not a trial. The principal function of a preliminary hearing is to protect an individual's right against an unlawful arrest and detention. At this hearing the Commonwealth bears the burden of establishing at least a *prima facie* case that a crime has been committed and that the accused is probably the one who committed it. It is not necessary for the Commonwealth to establish at this stage the accused's guilt beyond a reasonable doubt. In order to meet its burden at the preliminary hearing, the Commonwealth is required to present evidence with regard to each of the material elements of the charge and to establish sufficient probable cause to warrant the belief that the accused committed the offense.

***Commonwealth v. McBride***, 595 A.2d 589, 591 (Pa. 1991) (citations omitted). The Commonwealth's evidence need only be such that, if presented at trial and accepted as true, the trial judge would be warranted in permitting the case to go to the jury. ***Commonwealth v. Huggins***, 836 A.2d 862, 866 (Pa. 2003). "[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." ***Id***. "The question of the evidentiary sufficiency of the Commonwealth's *prima facie* case is one of law as to which this Court's review is plenary." ***Id***. at 865.

Upon review of the record, we agree with the trial court and conclude that the Commonwealth did not establish Appellee's connection to the middle bedroom of the house where contraband was discovered, and therefore, failed to establish a connection among Appellee, the contraband, and the illicit sale of narcotics. While the police did find a letter addressed to Appellee in the middle bedroom, the evidence established that the residence was a family home where Appellee lived with his brothers and parents. We agree with the trial court that the Commonwealth failed to prove that Appellee probably committed the crimes of possession of a controlled substance, PWID, or conspiracy to commit PWID. The notes of testimony from the initial preliminary hearing held in Municipal Court on October 3, 2013, reveal at most, one piece of mail found in the middle bedroom bearing Appellee's name. The only other attempt the Commonwealth made to connect Appellee to the middle bedroom was Police Officer Richard Fitzgerald's testimony regarding comments from Appellee's mother. N.T., 10/3/13, at 8-10. Appellee's counsel immediately objected on the basis of hearsay, and the trial court sustained the objection. *Id*. The questioning ceased and no other evidence was provided.

At the preliminary hearing on the refiling of the charges held before the Philadelphia County Court of Common Pleas, the Commonwealth's evidence remained scant:

MR. SCIOLLA [Appellee's Counsel]: And my argument, Judge, is the same argument I made [at the initial preliminary hearing held on October 3, 2013]. There were three adult children living in the house with the mother and father. Nobody has any idea how long the drugs were in that bedroom or the mail or if in fact that's my client's bedroom or the other brother's bedroom. All they have is a family house where, obviously, you're going to find mail in everybody's name. And they're suggesting that the drugs, the observed sale sold by his brother must be this man's drugs, not the other brother's, not the father's, not the mother's and not the brother that was seen selling the drugs.

MR. OSBORNE [Attorney for the Commonwealth]: And, Your Honor, we are at the preliminary hearing stage, so I think the inference here and all inferences in our favor is that if the mail is in that middle bedroom, that means that it's his middle bedroom. When I go home at night I don't leave my mail in my roommate's room so –

THE COURT: But I don't see any testimony showing that that was actually his room.

MR. OSBORNE: That's the argument, the mail that was found in that room makes that his room, that's the inference here.

THE COURT: But there were no clothes, nothing that you could show like sneakers or anything that it was this defendant's?

MR. OSBORNE: No, the only thing that we have is the mail to tie him to that room, mail in his name in that middle bedroom where all of this is found. And, also, to say that we have the mail in this room, that means he's in the room, he sees the grinders all over the dresser, he sees the scale --

MR. SCIOLLA: Judge, I got to object.

THE COURT: Go ahead, go ahead.

MR. OSBORNE: And he sees everything that's in the room. If he's in the room, at least with the mail, that means he knows what's going on in this room. And I would suggest at this level the inference is that if the mail was found in this middle

bedroom, then it's the middle bedroom. This is just at a preliminary hearing stage and with all reasonable inferences –

THE COURT: But even at that stage, you have to prove that this person more likely than not was the person that should be held for these offenses. If you have several people living in the house and then there's no other indication, with the search warrant when they searched the room, that there was ID, there was something, clothes of this particular defendant that was in the room, you know, you got several people living in that house.

Refile is denied.

(Proceeding concluded.)

N.T. Refile Hearing, 12/18/13, at 6-9.

The Commonwealth cites to **Commonwealth v. Bricker**, 882 A.2d 1008 (Pa. Super. 2005), and **Commonwealth v. Walker**, 874 A.2d 667 (Pa. Super. 2005), as support for its position that the letter, by itself, which was found in the middle bedroom, was sufficient to establish constructive possession[1] of the contraband and guilty knowledge of Appellee's brother's

---

[1] Because Appellee was not found with contraband on his person, the Commonwealth was required to establish constructive possession.

Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Commonwealth v. Brown**, 48 A.3d 426, 430 (Pa. Super. 2012) (internal citations and quotation marks omitted).

sales of narcotics. We conclude that *Bricker* and *Walker* are distinguishable.

In *Bricker*, the evidence established that the police executed a search warrant at the defendant's house. It was established that the defendant lived in that house, and when the police searched it, they discovered a bank statement addressed to the defendant. Clearly, these facts are analogous to the case at bar. However, additional evidence produced in *Bricker* revealed that the defendant was present in the kitchen when the police entered the house and that crack cocaine was found on the kitchen floor, on a couch in the adjacent living room, and in an upstairs bedroom. Significantly, the defendant had on his person a crack pipe, a rod used for cleaning a crack pipe, a filter for a crack pipe, and an electronic scale. Additionally, the defendant in *Bricker* admitted that he was a user of crack cocaine. All of these additional facts connected the defendant in *Bricker* to the contraband.

Similarly, in *Walker*, the defendant was present in the house when the police executed a search warrant. When the police entered, the officers observed three rooms in the basement: an office, a bedroom, and a bathroom. The defendant had dominion and control over the basement area where he kept his clothes and mail addressed to him. Inside the basement, the officers found cameras that monitored the walkway and driveway. In the middle of the room was a desk with two piles of cocaine. The officers

also discovered twenty-nine packets of additional cocaine, clear plastic baggies, $10,203.00 in U.S. currency, and seven guns. It was discovered that two other people lived with the defendant: a sixty-year-old female and an eighty-year-old male, but these individuals were not arrested. Upon defendant's arrest, he asked to get a shirt and shoes from the basement and admitted that he resided at the residence with his stepfather. Clearly, the evidence in **Walker** linking the defendant to the multiple items of contraband was more than a piece of mail.

While the evidence discussed in the aforementioned cases was reviewed under the more stringent reasonable doubt standard necessary to sustain a conviction and not, as here, the *prima facie* standard, the distinction between the instant case and **Walker** and **Bricker** is substantial regardless of the standard applied. In both **Walker** and **Bricker**, contraband, clothing, mail, and personal property were discovered in areas of a house over which it was established the defendants had dominion. Ultimately, the issue was whether the evidence linked the defendants to their respective residences. While the mail, in and of itself, that was discovered in **Walker** and **Bricker** tied the defendants **to the house** where contraband was uncovered, those cases do not stand for the proposition that mail addressed to the dwelling **tie a person to an individual bedroom** within the dwelling, especially where the contraband at issue was not

discovered in a common area or an area where the Commonwealth failed to show the defendant had access.

Upon review, we are constrained to agree with the trial court that, even when inferences are made in favor of the prosecution, the Commonwealth established only that Appellee likely resided at 4651 Rosehill Street. The Commonwealth, however, did not establish that Appellee resided in the middle bedroom where the contraband was discovered. As such, pursuant to our standard and scope of review, we agree with the trial court's conclusion that the Commonwealth failed to present a *prima facie* case. Accordingly, we affirm the order dismissing the charges against Appellee.

Order affirmed.

Judge Ott joins the Memorandum.

Judge Bowes files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/26/2015