682 A.2d 1296

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Timothy Lawrence ROMINE, Appellee.**

Superior Court of Pennsylvania.

Argued May 6, 1996.

Filed Aug. 28, 1996.

Lorinda L. Hinch, Assistant District Attorney, Mercer, for Commonwealth, appellant.

James M. Goodwin, Assistant Public Defender, Sharon, for appellee.

Before McEWEN, President Judge, CAVANAUGH, CIRILLO, President Judge Emeritus, and DEL SOLE, BECK, POPOVICH, FORD ELLIOTT, SAYLOR and EAKIN, JJ.

SAYLOR, Judge:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Mercer County suppressing, as violative of Appellee Timothy Romine's right to counsel, certain statements which Appellee made to the police following his arrest for solicitation to commit murder. Upon review, we conclude that this case involves neither a violation of the right to counsel guaranteed by the Sixth Amendment nor a violation of the right to counsel derived by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), from the Fifth Amendment's guarantee against compelled self-incrimination. As suppression was therefore unwarranted, we reverse.

On March 8, 1994, Appellee, after having been given *Miranda* warnings, made a statement at the South Pymatuning Township Police Department, in which he confessed to several drug offenses involving the unlawful use of firearms. After this confession, Appellee was arrested and placed in the

Mercer County Jail, as he was unable to post bond. Counsel from the Mercer County Public Defender's Office was then appointed to represent Appellee. On June 15, 1994, the Public Defender, on behalf of Appellee, forwarded to the District Attorney of Mercer County a standard form letter which stated the following:

> I am writing you, in your capacity as the Mercer County District Attorney, on behalf of our above-stated client. Under applicable constitutional protections and case law interpreting those provisions, you are hereby notified that our client has exercised his right to have counsel present during any and all interrogations, statements and/or contact with anyone concerning this case unless specifically waived by his attorney.
>
> We would ask that you instruct any and all law enforcement officers, agents thereof and/or informants and all persons who serve in law enforcement capacities under the jurisdiction of your office to abide by this decision since our client has exercised his rights.
>
> You will note that our client has signed below evidencing his consent to the above and his direction that it be carried out.
>
> Very truly yours,<br>/s/Public Defender

(Emphasis in original.) Below this was the following statement:

> I hereby exercise my right to remain silent and have my attorney present during any contact on behalf of the Commonwealth, indirect or direct.

Appellee signed his name in the space provided beneath this statement.

While housed in the county jail, Appellee engaged in several conversations with his cellmate, Louie Hebert. During these conversations, Appellee informed Hebert that he wanted to "do away with" the Mercer County Sheriff, William Romine, who was Appellee's cousin. After his first conversation with Appellee, Hebert contacted the police and advised them of the

nature of the conversation. The police urged Hebert to have further discussions with Appellee and to inform them of the subject matter of these discussions. Hebert complied, and at the end of June 1994, he met with State Police Trooper Scott Patterson, who directed him to learn what he could from talking with Appellee, but not necessarily to solicit information.

On June 30, 1994, two telephone conversations between Appellee and Trooper Patterson were arranged by Hebert, during which Trooper Patterson acted in an undercover capacity as a "hitman." In these conversations, which were tape-recorded, Appellee solicited Trooper Patterson in his undercover capacity to kill Sheriff Romine. Subsequently, on July 6, 1994, Appellee was arrested and charged with criminal solicitation to commit murder, and was taken to the Pennsylvania State Police Barracks in Mercer, Pennsylvania.

While at the State Police Barracks, Appellee was advised of his *Miranda* rights. Appellee did not request counsel, nor did he exercise his right to remain silent; rather, he signed a written form waiving his *Miranda* rights. After executing the *Miranda* waiver form, Appellee gave a statement to the State Police concerning the solicitation charge.

Subsequently, Appellee filed a motion to suppress his pre-arrest statements made to Hebert and Trooper Patterson, as well as his post-arrest statement made to the police at the State Police barracks. Following a hearing, the suppression court entered an order denying the motion in part and granting the motion in part. In a ruling that is not at issue here, the court denied Appellee's motion to suppress the pre-arrest statements.[1] The court granted Appellee's motion to suppress the post-arrest statement. According to the court, Appellee invoked his Fifth Amendment rights when, after having been charged with the drug and firearms offenses, he signed the

1. The court concluded that the pre-arrest statements were admissible under *Commonwealth v. Mayhue*, 536 Pa. 271, 639 A.2d 421 (1994), because they concerned an unsolved crime other than that with which Appellee had been charged. The court added that there was no violation of Fifth Amendment rights because the statements were not elicited during custodial interrogation.

statement at the bottom of the form letter provided by the Public Defenders Office. Relying on *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), and *Commonwealth v. Santiago,* 528 Pa. 516, 599 A.2d 200 (1991), the court concluded that because a defendant's Fifth Amendment rights are not offense-specific, the subsequent custodial interrogation of Appellee violated his Fifth Amendment rights even though the interrogation concerned an offense other than those for which charges were then pending against Appellee. Therefore, the court held, the statement elicited from Appellee during the interrogation had to be suppressed. The Commonwealth then filed this timely appeal, certifying that the suppression order substantially handicaps its prosecution of the instant case. *See, Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985); Pa.R.A.P. 311(d).

■ Where the Commonwealth appeals from the ruling of a suppression court, "we must consider only the evidence of the defendant's witnesses and so much of the evidence for the prosecution as read in the context of the record as a whole remains uncontradicted." *Commonwealth v. DeWitt,* 530 Pa. 299, 302, 608 A.2d 1030, 1031 (1992). In reviewing the ruling of a suppression court,

> [w]e must determine whether the factual findings are supported by the record and, assuming there is support in the record, we are bound by the facts and may reverse if the legal conclusions drawn from those facts are in error. *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985).

*Commonwealth v. Shiflet,* 431 Pa.Super. 444, 447, 636 A.2d 1169, 1170 (1994).

On appeal, the Commonwealth contends that the form letter sent to the District Attorney by the Public Defender did not, as the trial court held, constitute an invocation of Appellee's *Miranda*-derived Fifth Amendment right to counsel. Rather, the Commonwealth argues, it was an exercise of Appellee's Sixth Amendment right to counsel, and as such, was only applicable to the drug and firearms offenses for which prose-

cution had commenced at the time the letter was executed. In the alternative, the Commonwealth contends that even if the letter did constitute an assertion of rights implicated by the Fifth Amendment, such rights cannot be invoked anticipatorily outside the context of a custodial interrogation. In either case, according to the Commonwealth, suppression of Appellee's post-arrest statement to the State Police was unwarranted.

We begin our analysis with a review of the constitutional protections at issue. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." The purpose of this right "is to 'protec[t] the unaided layman at critical confrontations' with his 'expert adversary,' the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime." *McNeil,* 501 U.S. at 177–78, 111 S.Ct. at 2209, quoting *United States v. Gouveia,* 467 U.S. 180, 189, 104 S.Ct. 2292, 2298, 81 L.Ed.2d 146 (1984) (emphasis in original). Thus, the Sixth Amendment right to counsel "attaches only at or after the initiation of adversary judicial proceedings against the defendant." *Gouveia,* 467 U.S. at 188, 104 S.Ct. at 2297. Because it does not attach until a prosecution is commenced, the Sixth Amendment right to counsel is offense-specific: "It cannot be invoked once for all future prosecutions...." *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207.

In addition, the Sixth Amendment guarantees the right to representation by counsel not only at trial, but also at earlier, "critical" stages. *Maine v. Moulton,* 474 U.S. 159, 171, 106 S.Ct. 477, 484, 88 L.Ed.2d 481 (1985). After the Sixth Amendment has attached, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which the Sixth Amendment applies." *Michigan v. Jackson,* 475 U.S. 625, 631, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986). As the United States Supreme Court observed in *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), there exists a clear rule, established in

*Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), that "once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him." *Id.,* 430 U.S. at 402, 97 S.Ct. at 1240 (footnote omitted). "[I]f police initiate interrogation after a defendant's assertion . . . of his [Sixth Amendment] right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Jackson,* 475 U.S. at 637, 106 S.Ct. at 1411.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The United States Supreme Court has held that this guarantee encompasses a right to counsel:

[The Fifth Amendment right to counsel is] found . . . in this Court's jurisprudence relating to the Fifth Amendment guarantee [against compelled self-incrimination]. In *Miranda* [, *supra* ], we established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present.

. . . . .

In *Edwards* [*v. Arizona,* 451 U.S. 477, 486–87, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981) ], we established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," 451 U.S., at 484–485, 101 S.Ct., at 1884–1885— which means . . . that counsel must be present, *Minnick v. Mississippi,* 498 U.S. [146], 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver. . . . The *Edwards* rule, moreover, is not offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached

regarding any offense unless counsel is present. *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

*McNeil,* 501 U.S. at 176–77, 111 S.Ct. at 2208 (emphasis in original). "The purpose of the *Miranda–Edwards* guarantee ... is to protect ... the suspect's 'desire to deal with the police only through counsel[.]' " *McNeil,* 501 U.S. at 178, 111 S.Ct. at 2209, quoting *Edwards,* 451 U.S. at 484, 101 S.Ct. at 1884.

*McNeil* illustrates the operation of these theoretical concepts in a factual context similar to that of the present case. After being arrested for armed robbery, McNeil was advised of his *Miranda* rights by two deputy sheriffs. He refused to answer questions but did not request an attorney. At a subsequent bail hearing, he was represented by a public defender. McNeil was later advised of his *Miranda* rights by a law enforcement officer from another jurisdiction who wished to question him about a murder unrelated to the armed robbery. McNeil waived his *Miranda* rights and, over the course of several days, made several incriminating statements concerning his role in the murder. After being charged with the murder, McNeil filed a motion to suppress the incriminating statements. The motion was denied, and McNeil was convicted on the murder charge.

Although his Sixth Amendment right to counsel had attached before he made the inculpatory statements concerning the murder, McNeil did not contend on appeal that his Sixth Amendment right to counsel had been abridged. The reason, of course, was that the Sixth Amendment right was offense-specific; it pertained only to the offense of armed robbery with which McNeil had originally been charged. Instead, McNeil asserted that his courtroom appearance with an attorney on the armed robbery charge constituted **not only** an invocation of his offense-specific, Sixth Amendment right to counsel **but also** an invocation of his non-offense-specific, Fifth Amendment right to counsel. Invocation of the Fifth Amendment right, he asserted, rendered invalid his subsequent waiver of the right to counsel when the police sought to question

him about the murder. The Supreme Court of Wisconsin rejected this argument, and affirmed the suppression court.

The United States Supreme Court granted certiorari to consider "whether an accused's invocation of his Sixth Amendment right to counsel during a judicial proceeding constitutes an invocation of his *Miranda* right to counsel." *Id.,* 501 U.S. at 173, 111 S.Ct. at 2206. The Court held that it did not. After noting that the Sixth Amendment right to counsel, unlike the *Miranda–Edwards* right to counsel, was offense-specific, and that the two guarantees protected different interests, as discussed *supra,* the Supreme Court analyzed the matter as follows:

> To invoke the Sixth Amendment interest is, as a matter of fact, not to invoke the *Miranda–Edwards* interest. One might be quite willing to speak to the police without counsel present concerning many matters, but not the matter under prosecution. It can be said, perhaps, that it is likely that one who has asked for counsel's assistance in defending against a prosecution would want counsel present for all custodial interrogation, even interrogation unrelated to the charge. That is not necessarily true.... But even if it were true, the likelihood that a suspect would wish counsel to be present is not the test for applicability of *Edwards.* The rule of that case applies only when the suspect "ha[s] expressed" his wish for the particular sort of lawyerly assistance that is the subject of *Miranda. Edwards, supra,* 451 U.S., at 484, 101 S.Ct., at 1884 (emphasis added). It requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police. Requesting the assistance of an attorney at a bail hearing does not bear that construction.

*Id.,* 501 U.S. at 178, 111 S.Ct. at 2209 (emphasis in original). Therefore, by appearing in court with an attorney on the armed robbery charge, McNeil had invoked only the Sixth Amendment right to counsel, and the protection of that invocation did not extend to the subsequent custodial interrogation concerning a different crime.

Appellee attempts to distinguish his situation from that of the defendant in *McNeil* by pointing to the statement in the letter of June 15, 1994, declaring that he was thereby exercising his "right to remain silent and have [his] attorney present during any contact on behalf of the Commonwealth, indirect or direct." He argues that by signing such statement, he invoked his Fifth Amendment, non-offense-specific right to counsel. Therefore, he asserts, his post-arrest statement must be suppressed under the holding of the Pennsylvania Supreme Court in *Santiago, supra.*

In *Santiago*, F.B.I. agents arrested the defendant, Salvador Carlos Santiago, on a charge of unlawful flight to avoid prosecution and advised him of his *Miranda* rights. Santiago invoked his right to remain silent and requested an attorney. The next day a federal public defender was appointed to represent him, and he was arraigned. The following day two Pittsburgh police detectives sought to question Santiago about a murder. Santiago expressed his willingness to speak to the detectives in the absence of his attorney, he was advised of and waived his *Miranda* rights, and he then admitted having committed the murder. Following his conviction on the murder charge, he appealed, contending that "the Pittsburgh police detectives improperly initiated custodial interrogation after he had invoked his right to counsel in violation of the Fifth and Fourteenth Amendments...." *Id.,* 528 Pa. at 519, 599 A.2d at 201 (footnote omitted). The Pennsylvania Supreme Court agreed, reasoning as follows:

> In the case *sub judice,* ... Santiago unquestionably invoked his Fifth Amendment right to counsel in response to the initial interrogation by the F.B.I. agents. This exercise of a constitutional right, which the United States Supreme Court has held to be "non-offense-specific," therefore barred officials from interrogating Santiago regarding any other offense without the presence of counsel.
>
> Accordingly, notwithstanding the fact that the Pittsburgh police detectives Mirandized Santiago and that Santiago specifically waived the presence of [his] attorney ..., we are compelled to conclude that the conduct of the Pittsburgh

police detectives in initiating interrogation of Santiago without notifying [Santiago's] attorney ..., while Santiago remained in custody on the unlawful flight charge and after he had invoked his Fifth Amendment right to counsel, violated Santiago's Fifth Amendment right to counsel.

*Id.,* 528 Pa. at 522, 599 A.2d at 202–03 (footnote omitted). Accordingly, the Supreme Court vacated the judgment of sentence and remanded for a new trial. In the present case, Appellee argues that he was entitled to suppression of the statement that he made to the State Police because he, like Santiago, had previously invoked his Fifth Amendment, non-offense-specific right to counsel.

■ We conclude, however, that the letter of June 15, 1994, constituted a reiteration of Appellee's Sixth Amendment, offense-specific right to counsel, and as such, did not render impermissible the subsequent interrogation of Appellee concerning a different offense. The letter itself expressly limits the exercise of Appellee's right to counsel to the case then pending against him, namely, the drug and firearms charges. As noted earlier, the letter was sent to the District Attorney of Mercer County by the Public Defender after the latter was appointed to represent Appellee on the drug and firearms charges. The letter reads in pertinent part as follows:

[Y]ou are hereby notified that our client has exercised his right to have counsel present during any and all interrogations, statements and/or contact with anyone **concerning this case** unless specifically waived by his attorney.

(Emphasis added.) Admittedly the language of the statement signed by Appellee at the bottom of the letter ("I hereby exercise my right to remain silent and have my attorney present....") echoes the standard, Fifth–Amendment–based *Miranda* warning. The purpose of the signed statement, however, is explained in the concluding paragraph of counsel's letter:

You will note that our client has signed below evidencing his consent to the above and his direction that it be carried out.

(*Emphasis added.*) Read in context, therefore, the statement signed by Appellee indicates only that Appellee thereby exercised his right to have counsel present during any interaction with law enforcement officials "concerning this case[,]" that is, the drug and firearms case. In other words, the invocation was offense specific, consistent with Sixth Amendment jurisprudence.

This reading comports with the purpose which prompted counsel to transmit the letter in the first instance. As the United States Supreme Court has observed,

> [o]nce the right to counsel [under the Sixth Amendment] has attached and been asserted, **the State** must of course honor it. This means more than simply that **the State** cannot prevent the accused from obtaining the assistance of counsel. The Sixth Amendment also imposes on **the State** an affirmative obligation to respect and preserve the accused's choice to seek this assistance.

*Jackson,* 475 U.S. at 635 n. 8, 106 S.Ct. at 1410 n. 8, quoting *Moulton,* 474 U.S. at 170–71, 106 S.Ct. at 479 (emphasis added in *Jackson.*) Thus the Public Defender, having been appointed to represent Appellee on the drug and firearms charges, appropriately apprised the government of such representation and admonished the government not to interrogate Appellee concerning those charges without counsel present. Such letter was not surplusage, as Appellee argues; it was intended to ensure that the government would honor Appellee's exercise of his Sixth Amendment right to counsel with regard to the charges for which he had sought and received such counsel.

Finally, as the Commonwealth points out, the Fifth Amendment right to counsel cannot be invoked anticipatorily outside of the context of custodial interrogation:

> [The U.S. Supreme Court has] in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation".... If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must

be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*McNeil,* 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3.

In sum, defense counsel's letter to the District Attorney implicated Appellee's right to counsel under the Sixth Amendment, not the Fifth. That being the case, its effect was offense-specific; it pertained only to the drug and firearms charges then pending against Appellee. We hold, therefore, that the suppression court erred in suppressing Appellee's statement to the State Police concerning the solicitation offense. Accordingly, we reverse the order of January 3, 1995, and remand the case for trial.

Order reversed. Case remanded. Jurisdiction relinquished.

POPOVICH, J., files a concurring opinion which is joined by McEWEN, P.J., and CAVANAUGH, J.

POPOVICH, Judge, concurring.

While I agree with my brethren that neither appellee's right to counsel guaranteed by the Sixth Amendment to the United States Constitution nor his Fifth Amendment "non-offense-specific" right to counsel as established in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were violated, I do so based upon a decidedly different interpretation of *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).

The majority concludes that appellee asserted only his offense-specific right to counsel as guaranteed by the Sixth Amendment in the unrelated drug and unlawful use of a firearm case. Upon review, however, I am convinced that appellee *attempted* to assert his Fifth Amendment right to counsel regarding the unrelated charges but was unable to do

so validly because he did not assert his non-offense-specific right to counsel in response to a custodial interrogation. Consequently, appellee's *Miranda* right to counsel was not violated when he was subjected to custodial interrogation in the present case. Simply put, appellee never asserted his Fifth Amendment right to counsel under the unusual facts *sub judice* and, therefore, he was able to execute a valid waiver of his *Miranda* right to counsel at the Mercer State Police Barracks on July 6, 1994.

First, I must disagree with the majority's conclusion that asserted only his offense-specific Sixth Amendment right to counsel. While his counsel stated that appellee "exercised his right to have counsel present during any and all interrogations, statements and/or contact with anyone *concerning this case* unless specifically waived by his attorney", appellee did not limit his assertion of his *Miranda* rights, stating only, "I hereby exercise my right to remain silent and have my attorney present during any contact on behalf of the Commonwealth, indirect or direct." Given appellee's unequivocal written assertion of his *Miranda* right, I conclude that appellee did *attempt* to assert his non-offense-specific right to counsel, albeit, as the following discussion will reveal, an ineffectual attempt.

As stated in *McNeil*, 501 U.S. at 177, 111 S.Ct. at 2208, "[t]he *Edwards* rule, moreover, is *not* offense-specific: Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson*, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988)." Although appellee did assert his *Miranda* right to counsel in the unrelated criminal action, I, nevertheless, must conclude that appellee did not *validly* assert that right.

Herein, appellee did not assert his *Miranda* right to counsel in response to a custodial interrogation, but rather asserted his non-offense-specific right to counsel in a letter directed to the Commonwealth after he had been arrested and incarcerated, as he was unable to post bond. In *McNeil*, our Supreme Court anticipated just such a letter and stated:

The dissent predicts that the result of this case will routinely be circumvented when, "[i]n future preliminary hearings, competent counsel ... make sure that they, or their clients, make a statement on the record" invoking his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"—which a preliminary hearing will not always, or even usually, involve, cf. *Pennsylvania v. Muniz,* 496 U.S. 582, 601–602, 110 S.Ct. 2638, 2650–2651, 110 L.Ed.2d 528 (1990) (plurality opinion); *Rhode Island v. Innis,* 446 U.S. 291, 298–303, 100 S.Ct. 1682, 1688–1691, 64 L.Ed.2d 297 (1980). If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar effect. . . .

*McNeil,* 501 U.S. at 182 n. 3, 111 S.Ct. at 2211 n. 3.[1]

In other words, *McNeil, supra,* teaches that a suspect, even one who has been arrested and incarcerated, may not invoke his non-offense-specific *Miranda* right to counsel *unless and until* the police have initiated a custodial interrogation. Presently, appellee was not subjected to a custodial interrogation during which he asserted his *Miranda* rights, rather he asserted his *Miranda* rights *by letter in anticipation* of future custodial interrogations. In *McNeil, supra,* the United States Supreme Court indicated such a letter would not be effective to assert one's non-offense-specific *Miranda* rights. Similarly, I conclude that appellee never validly asserted his *Miranda* rights in the unrelated drug and weapons case via his "anticipatory" letter. Consequently, there was no assertion of the

---

1. Although this passage from *McNeil, supra* is cited the majority, I am convinced the majority has misinterpreted its application to the present facts.

non-offense-specific *Miranda* rights which would serve to prevent the police from subjecting appellee to a custodial interrogation in the case *sub judice*, and appellee's waiver of those rights on July 6, 1994, was effective.

Further, assuming *arguendo*, that appellee had validly asserted his non-offense-specific right to counsel in the unrelated criminal action, I would agree with the lower court's decision to suppress appellee's inculpatory statements to the police which were given in response to police-initiated interrogation. I would find that constitutional jurisprudence would permit appellee to exercise his non-offense-specific *Miranda* right to counsel to prevent police-initiated custodial interrogation concerning any crimes which he may have committed *before or after* incarceration and invocation of his right to counsel.

As *McNeil*, 501 U.S. at 177, 111 S.Ct. at 2208–09, clearly states: "Once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any offense* unless counsel is present." *McNeil, supra*, does not limit the effect of the *Miranda* right to counsel to only those crimes committed before the invocation of the right. Rather, *McNeil, supra*, provides that the right applies to "*any* offense" about which a suspect is subjected to custodial interrogation after he has asserted the non-offense-specific right to counsel.

Moreover, I fail to discern any philosophical reason to distinguish the present situation where a suspect who is incarcerated is subjected to a police-initiated, custodial interrogation concerning a crime committed after he has asserted his Fifth Amendment right to counsel from the more common situation where the incarcerated suspect is interrogated about a crime which he committed before incarceration but for which he was not a suspect until after his incarceration and his assertion of his right to counsel. *See, Commonwealth v. Wyatt*, 447 Pa.Super. 393, 669 A.2d 954 (1996). In either situation, the suspect does not become the focus of the current investigation until after he has asserted his *Miranda* right to counsel.

Clearly, the Fifth Amendment right to counsel is designed to protect the suspect who does not believe that he is sufficiently capable of dealing with his adversaries (the police) single-handedly. *McNeil*, 501 U.S. at 180, 111 S.Ct. at 2210. In the present case, had appellee validly asserted his Fifth Amendment right to counsel, albeit on unrelated charges, prior to the custodial interrogation, he would be entitled to its protection. *McNeil, supra; Wyatt, supra.* In my view, if appellee had validly notified police he would talk to them *only* in the presence of counsel, then further communication without the presence of counsel would have violated the Fifth Amendment, regardless of when he allegedly committed the crime which was the focus of the investigation.

In sum, I conclude that appellee did not validly assert his non-offense-specific right to counsel in response to a custodial interrogation. Consequently, appellee executed a valid waiver of his *Miranda* rights on July 6, 1994, before he was interrogated by police at the Mercer County Barracks.

McEWEN, P.J., and CAVANAUGH, J., join.