J-S38040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| GREGORY JAMES COUSAR | : | No. 1619 EDA 2022 |

Appeal from the Order Entered June 8, 2022,
in the Court of Common Pleas of Monroe County,
Criminal Division at No(s):  CP-45-CR-0001878-2021.

BEFORE:  KUNSELMAN, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY KUNSELMAN, J.:               **FILED JANUARY 24, 2023**

The Commonwealth appeals from an order granting *habeas corpus* relief to Gregory James Cousar on a burglary charge.[1]  By forcing himself into someone else's occupied home, Cousar provided the Commonwealth with *prima facie* evidence from which a finder of fact may infer that he intended to commit a crime therein.  Thus, we reverse.

When reviewing an order that grants *habeas corpus* relief, we face a pure question of law for which "our standard of review is *de novo*, and our scope of review is plenary."  ***Commonwealth v. McClelland***, 233 A.3d 717, 732 (Pa. 2020).  "Moreover, inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case."  ***Commonwealth v. Huggins***, 836 A.2d 862, 865 (Pa. 2003).  Based

_____

[1] ***See*** 18 Pa.C.S.A. § 3502(a)(1)(i).

on testimony from the Commonwealth's witnesses at the *habeas corpus* hearing, the facts of this case are as follows.

Near 1:00 a.m., on June 14, 2021, Melissa Mills was alone in her three-bedroom apartment. While in bed using her laptop, Ms. Mills heard a noise from the living room and assumed it was her roommates. She described the sound as someone kicking or breaking something. When the noise got louder, Ms. Mills called out, "Who is that?" N.T., 1/10/22, at 13.

A male replied, "Open the f'ing door. Open the f'ing door." *Id.* at 14.

Ms. Mills said, "Who is that? What do you want? What do you want?" *Id.* at 13. The man, whom Ms. Mills did not know, turned out to be Cousar. He kicked in her bedroom door and had gun in his hand. Cousar did not point the weapon at Ms. Mills; he "just held it in his hand." *Id.* at 19. Cousar stood in the doorway to Ms. Mills' bedroom. She again asked, "What do you want? What do you want?" *Id.* at 14.

Cousar said nothing. He turned, kicked in the bedroom door beside Ms. Mills' bedroom, and then "stormed out across the apartment." *Id.* at 15. Cousar damaged three doors, but he "didn't take anything." *Id.* at 25.

Terrified, Ms. Mills called 911. She and investigators located Cousar about ten hours later. The police arrested him.

Detective Donald Scarfo, of the Pocono Mountain Regional Police Dept., interviewed Cousar after reading him the ***Miranda***[2] warnings. Cousar

---

[2] ***See Miranda v. Arizona***, 384 U.S. 436 (1966).

confessed to the break-in and agreed with Ms. Mills' recollection of events. The next day, the Commonwealth charged Cousar with burglary (a felony of the first degree) and other lesser offenses.[3]

Ms. Mills testified at a preliminary hearing, but neither side prepared a transcript. The magisterial district court held all charges over for the trial court.

After waiving his arraignment, Cousar filed an omnibus, pretrial motion. Among other things, he sought a Writ of *Habeas Corpus* based on the following:

1. [Cousar] is incarcerated in Monroe County Correctional Facility on $50,000.00 secured.

2. On July 15, 2021, [he] had a preliminary hearing after which charges were bound over.

3. The charges bound over were Burglary and related offenses.

      \*  \*  \*

6. In this case, the allegations relate to June 14, 2021.

7. [Cousar] is alleged to have entered another person's home with a BB gun, looking for his daughter.

---

[3] The other offenses are criminal trespass, breaking into an occupied structure (18 Pa.C.S.A. § 3503(a)(1)(ii)); possessing an instrument of crime (18 Pa.C.S.A. § 907(a)); terroristic threats (18 Pa.C.S.A. § 2706(a)(1)); simple assault (18 Pa.C.S.A. § 2701(a)(3)); and loitering and prowling at night (18 Pa.C.S.A. § 5506). The trial court did not grant *habeas corpus* relief on those charges; they are not at issue in this appeal.

8.    [He] is not alleged to have known the other person whose home he entered.

9.    That other person was present in the home when [Cousar] entered.

10.   [Cousar's] daughter was not present in the home at that time, nor is she apparently even known to that person.

\* \* \*

**MOTION FOR *HABEAS CORPUS* RELIEF**

25.   The foregoing paragraphs are incorporated by reference.

26.   [Cousar] challenges the *prima facie* case.

27.   [He] requests dismissal of the charges for failure to show a *prima facie* case.

WHEREFORE, [Cousar] requests that a hearing be scheduled and, afterwards, that the Court dismiss all charges for failure to show a *prima facie* case.

Omnibus Motion at 1-3.

Three months later, the Commonwealth moved to dismiss that motion. In its view, Cousar had violated Pennsylvania Rule of Criminal Procedure 575(A)(2)(c), regarding specificity of motions. It believed Cousar included no facts to support his request. As such, the Commonwealth claimed that Cousar "deprived [it] of the ability to adequately respond to the motion and/or prepare for the hearing." Commonwealth's Motion to Dismiss at 3.

On January 10, 2022, the trial court took the Commonwealth's Motion to Dismiss the *habeas corpus* motion under advisement. It then held a suppression/*habeas corpus* hearing and directed the parties to file post-

hearing briefs. At the end of the hearing, Cousar limited his *habeas corpus* motion to the charges of burglary, terroristic threats, and simple assault. The trial court issued an opinion and order denying the motion to suppress, but it granted Cousar *habeas corpus* relief as to the burglary charge.[4]

The Commonwealth then filed this timely appeal, based upon Pa.R.A.P. 311(d).

The Commonwealth raises two issues on appeal. They are:

> 1. Whether the [trial] court abused its discretion in denying the Commonwealth's Motion to Dismiss [Cousar's] Omnibus Motion, in part, when the *habeas* relief in [his] Omnibus Motion failed to comply with Pa.R.Crim.P. 575 . . . ?
>
> 2. Whether the [trial] court erred by failing to view the evidence in the light most favorable to the Commonwealth in dismissing the burglary charge, where some evidence of all the elements of burglary was submitted at the *habeas* hearing?

Commonwealth's Brief at 16. We address each issue in turn.

*1. The Form of the* Habeas Corpus *Motion*

First, the Commonwealth renews its procedural challenge to the motion for *habeas corpus* relief. The Commonwealth contends the trial court abused its discretion by entertaining Cousar's motion for *habeas corpus* relief.

In performing an abuse-of-discretion review, we recall that "an abuse of discretion is not merely an error of judgment . . . ." ***Commonwealth ex rel.***

---

[4] The court did not address the charges of terroristic threats or simple assault in its opinion and order. The record does not explain the oversight.

*Hartranft v. Hartranft*, 407 A.2d 389, 391 (Pa. Super. 1979). Instead, "if, in reaching a conclusion, the law is overridden or misapplied; or the judgment exercised is manifestly unreasonable; or [that judgment is] the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Id.* (some punctuation omitted).

In its argument, the Commonwealth never identifies which of the three types of abuse of discretion it thinks that the trial court committed. Based on the Commonwealth's framing of its first issue and the structure of its argument, we surmise it contends that the trial court overrode or misapplied Pa.R.Crim.P. 575(A)(2)(c).

Pennsylvania Rule of Criminal Procedure 575(A)(2)(c) provides that a "motion shall state with particularity the grounds for the motion, the facts that support each ground, and the types of relief or order requested." Notably, the Commonwealth cites no case where a court has applied that Rule to a *habeas corpus* motion, and our research has not revealed any precedent applying it in to such a motion.

Instead, the Commonwealth relies upon cases where this Court applied Pa.R.Crim.P. 575(A)(2)(c) to suppression motions; it would have us extend that application to *habeas corpus* practice. In the various suppression cases that the Commonwealth cites, we held that bald allegations of illegally seized evidence do not satisfy Rule 575(A)(2)(c) and, as such, the vague allegations do not compel the prosecution to proceed with a suppression hearing. *See* Commonwealth's Brief at 22-23.

- 6 -

The Commonwealth indicates that Cousar did not specify which of the six charges he was challenging in his *habeas corpus* motion. It believes that Pa.R.Crim.P. 575(a)(2)(c) dictates that the *habeas corpus* motion "should be tailored to address individual elements of particular offenses so that the Commonwealth may properly research the issues, develop a record, and the court can have meaningful review of the issue." Commonwealth's Brief at 23. Thus, the Commonwealth argues that Cousar deprived it of a fair opportunity to prepare for the *habeas corpus* hearing and thereby make its *prima facie* case for the charge of burglary.[5] Like the trial court, we disagree.

In denying the Commonwealth's Motion to Dismiss Cousar's *habeas corpus* motion, the trial court reasoned as follows:

> A Motion for *Habeas Corpus* Relief, in general, is a request by a defendant for the Commonwealth to meet its own initial burden of production as to the charges alleged. That is to say, the Commonwealth is already well aware that it must provide sufficient evidence to prove a *prima facie* case, and a defendant is merely requesting that it do so. While [Cousar's] Motion for *Habeas Corpus* Relief is unusually brief and imprecise, these imperfections do nothing to harm the Commonwealth's ability to adequately respond. Accordingly, we will deny the Commonwealth's motion.

---

[5] We note that the Commonwealth concludes its argument with an incorrect quotation, as follows: "In the absence of any allegations in the petition which make out a *prima facie* case for allowing a Writ of *Habeas Corpus*, no hearing on the petition was necessary . . . ." which the Commonwealth attributes to **Commonwealth ex rel. De Poe v. Ashe**, 74 A.2d 767 (Pa. Super. 1950). Commonwealth's Brief at 24. There is no such sentence in that case. We see this as merely poor draftsmanship, rather than a breach of the duty of candor owed to this Court, because the incorrect quotation is a fair paraphrasing of various statements within that case.

Trial Court Order and Opinion, 5/27/22, at 5. This opinion is well-reasoned and logical. We agree with the trial court's analysis.

There is no reasoned basis for a hyper-technical application Pa.R.Crim.P. 575(A)(2)(c) to *habeas corpus* motions, as there is with motions to suppress. A suppression motion could be based on a whole number of events that took place during a criminal investigation. For example, it could challenge whether a traffic stop was legal; or whether there was probable cause or reasonable suspicion to detain someone on the street; or whether a person had actual or apparent authority to consent to a search; or whether there was sufficient probable cause in an affidavit to justify the issuance of a search warrant; or where a confession was knowingly and voluntarily made; or any combination of these; and many other issues. Thus, a generalized suppression motion would leave the Commonwealth guessing as to what it needs to prove at the hearing. Hence, Pa.R.Crim.P. 575(A)(2)(c) plays a critical role in narrowing the scope of a motion to suppress and the subsequent hearing.

Similar concerns do not pertain to a *habeas corpus* motion, because, as the trial court observed, the scope and aim of a *habeas corpus* motion is clear on its face. At most, a pretrial *habeas corpus* motion challenges the *prima facie* case of all elements, of all offenses that the Commonwealth has alleged the defendant committed. In fact, Cousar's *habeas corpus* motion informed the Commonwealth of this intent.

Cousar identified the case by putting a proper caption and docket number on the omnibus motion. He alleged where he was incarcerated,

identified the lead charge as burglary, and included the lesser offenses by stating "and related offenses."  Omnibus Motion at 1.  Cousar then summarized the Commonwealth's allegations against him and indicated that he "challenge[d] the *prima facie* case" and sought "dismissal of the charges for failure to show a *prima facie* case." ***Id.*** at 3.  The reasonable interpretation of Cousar's motion is that he desired to challenge all elements, of all counts against him due to a lack of a *prima facie* case.  Failure to identify specific elements of the crimes that he believes are lacking does not necessitate dismissal of Cousar's motion.

Notably, the sample Petition for a Writ of *Habeas Corpus* in THE PENNSYLVANA STANDARD PRACTICE contains no more detail than Cousar's motion.  That form petition places the burden of proving the legal sufficiency of an incarceration upon the jailer.  The form provides:

> *[Caption]*
>
> To the Honorable *[name of judge]*, Judge of the Court of *[name of court]*, for the County of *[name of county]*:
>
> The petition of *[name of petitioner]* respectfully presents:
>
> That *[he/she]* is *[detained unjustly/confined]* by *[name of respondent]*, keeper of the county prison of *[name of county]*, in the said prison for supposed criminal matter that is set forth in the warrant of commitment, a copy whereof is hereto annexed and marked "Exhibit *[designation of exhibit 1]*," and is being unlawfully restrained of *[his/her]* liberty.
>
> Wherefore, the petitioner prays that a Writ of *Habeas Corpus* be granted and awarded for *[his/her]* relief, under the seal of the said Court of *[name of court]*, directed to the said *[name of respondent]*, commanding *[him/her]* to have

> the body of the petitioner before your Honor immediately, to do, submit to, and receive whatsoever your Honor may consider right in that behalf and, likewise, to certify specifically and fully the true causes of *[his/her]* commitment and detainer and when *[he/she]* was committed, agreeably to the *[name of court]* of the State of *[name of state]*.

18 STANDARD PENNSYLVANIA PRACTICE 2d at 277-78, § 98:62.

The above language, or language like it, has initiated *habeas corpus* hearings since colonial times.[6] It is hard to imagine that the Supreme Court of Pennsylvania intended to discontinue the historically rooted language of the petition for a Writ of *Habeas Corpus*, *sub silentio*, by adopting Pa.R.Crim.P. 575. Hence, we decline the Commonwealth's invitation to add procedural obstacles between the incarcerated and the "great and efficacious writ in all manner of illegal confinement." Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND (1765–1769), Chicago U.P. at 129–137 (1979 ed.).

Moreover, the record reflects that Cousar's motion for *habeas corpus* relief did not negatively impact the Commonwealth. In fact, the Commonwealth presented two witnesses at the hearing. They related the events of the break-in and Cousar's confession. As explained below, their

_____

[6] The form petition closely follows the Latin of the Writ of *Habeas Corpus*. **See** Hurd, TREATISE ON THE RIGHT OF PERSONAL LIBERTY, AND ON THE WRIT OF *HABEAS CORPUS* Vol. 3., 1858 at 232. The ancient Writ roughly translates as follows: "We command you to bring the body of *[Mr. X.]*, in our prison under your custody detained, as alleged [in *Mr. X.'s* Petition for this Writ], together with evidence of the day and the cause of his taking and detention, by whatever name the said *[Mr. X.]* may be known therein, and you shall have all that at our Court . . . to subject yourself and to receive whatever our Court shall then and there consider and order in this case. Neglect this order at your peril. And you shall bring this Writ with you, as well."

testimony established a *prima facie* case for all the alleged offenses, including burglary. Thus, the Commonwealth's reliance upon Pa.R.Crim.P. 575(A)(2)(c) appeals to form over substance.

We are not persuaded that the trial court overrode or misapplied Pa.R.Crim.P. 575(A)(2)(c), because we do not think that Cousar's *habeas corpus* motion violated that rule in any meaningful way. The Commonwealth's first issue affords it no relief.

*2.    The Burglary Charge*

For its second claim of error, the Commonwealth contends that it made its *prima facie* showing that Cousar committed the crime of burglary, when he forcibly entered Ms. Mills' apartment. The parties agree that Cousar committed the *actus reus* of that offense charge. Thus, we need only consider the *mens rea* element.

A person commits burglary in Pennsylvania if he enters an occupied structure "with the intent to commit a crime therein . . . ." 18 Pa.C.S.A. § 3502. The "specific intent element of the crime of burglary is limited to whether the accused entered with a 'general criminal intent' to commit any crime." **Commonwealth v. Alston**, 651 A.2d 1092, 1095 (Pa. 1994).

**Alston** is very much like this case. There, a man awoke in the middle of the night upon hearing his burglar alarm. He found Alston creeping up the basement stairs. Alston saw him and fled. "Upon further investigation, it was discovered that the locked, basement door of [the] residence had been damaged as a result of forcible entry." **Id.** at 1093. The Supreme Court of

- 11 -

Pennsylvania held that these facts allowed the jury to find that Alston had the *mens rea* necessary for a conviction of burglary.

In doing so, the Court adopted the plurality opinion in ***Commonwealth v. Wagner***, 566 A.2d 1194 (Pa. 1989). The ***Wagner*** plurality concluded that, when a stranger breaks into one's home, one can rationally assume that he is there to commit a crime. "When a stranger . . . breaks [through] your door, . . . neither you nor a jury should be considered harsh, if you believe he is not an aimless waif bringing compliments of the evening, or a passing sojourner of eccentric ways, or a harmless loiterer in the evening shadows." ***Id.*** at 1194.

The defendant "would have us believe that hiding in your bedroom under such conditions is an unnecessary foolishness in the presence of simple pleasantries." ***Id.*** However, the "jury could find, and did [find], more sinister reasons afoot." Thus, it "had every right to believe [the defendant] was . . . attempting a burglary." ***Id. See also Commonwealth v. Lambert***, 795 A.2d 1010, 1022 (Pa. Super. 2002) (*en banc*) (holding that entering a private, occupied structure by "force strong enough to shatter the door and its frame into wood shards" is sufficient evidence to "permit the inference that [the defendant] intended a criminal purpose" therein).

In short, our precedents indicate that forcibly breaking a locked door of an occupied structure is, in and of itself, sufficient evidence from which a jury may infer the specific criminal intent for burglary. Here, Cousar broke down Ms. Mills' front door. Thus, based solely on this evidence, the Commonwealth

made its *prima facie* case for burglary and is entitled to relief on its second claim of error. The trial court erred in concluding otherwise.

Order reversed. Case remanded for further proceedings.

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/24/2023